IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

COMPANION PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Plaintiff,

    v.

CHARLES DAVID WOOD, JR.;
AMS STAFF LEASING, INC.;
BRECKENRIDGE ENTERPRISES, INC.; and
ASPEN ADMINISTRATORS, INC.,

        Defendants.

C/A No. 3:17-cv-00514 -CMC

OPINION AND ORDER
ON MOTION TO DISMISS
(ECF No. 25)

     This matter is before the court on Defendants' Motion to Dismiss the First Amended Complaint. ECF No. 25 (Motion to Dismiss); ECF No. 21 (First Amended Complaint). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

     **Related Actions.** This is the third related action between the parties. The first action was initiated by Highpoint Risk Services, LLC ("Highpoint"), an entity owned by Defendant Charles David Wood, Jr. ("Wood"), against Companion Property and Casualty Insurance Company ("Companion") in the Northern District of Texas. *Highpoint Risk Serv., LLC, et al. v. Companion Prop. & Casualty Ins. Co.*, C.A. No. 3:14-cv-3398-L ("*Companion I*"). *See* ECF No. 25-1 at 3 (summarizing prior litigation). The claims in *Companion I* focus on a line of business the courts and parties have referred to as the "Pay-Go" line of business. The Defendants here were later added as third-party Defendants in *Companion I*. *Id.* The third-party claims and counterclaims address a line of business governed by a 2006 Coverage Agreement and various related agreements

in addition to the Pay-Go line of business.  *Id.*[1]  *Companion I* is set for trial in February 2018.  *See* ECF No. 25-1 at 3 n.4 (citing *Companion I*, ECF No. 139).

*Companion II*.  Roughly a month after *Companion I* was filed, Companion filed an action in this court against Highpoint, Wood, and several other entities owned by Wood.  Those entities include the present Defendants AMS Staff Leasing, Inc. ("AMS"); Breckenridge Enterprises, Inc. ("Breckenridge"); and AMS Staff Leasing II, Inc. ("AMS II") (collectively "AMS Defendants")).  *Companion Prop. & Casualty Ins. Co. v. Wood, et al.*, C.A. No. 3:14-cv-3719-CMC ("*Companion II*").  The claims in *Companion II* related to both the Pay-Go line of business and the 2006 Coverage Agreement line of business.  However, in deference to the court in which the claims were first raised, this court stayed and later dismissed claims related to the Pay-Go line of business from *Companion II*.  The remaining claims proceeded through discovery and are now in the final stages of litigation.

Certain deadlines in *Companion II* are significant to some of Defendants' arguments for dismissal.  These include the deadline for amendment of pleadings, which passed on August 13, 2015.  *See Companion II*, ECF No. 71 (Second Amended Scheduling Order).  They also include the deadline for discovery, which passed on September 14, 2016, subject to an extension for limited purposes into October 2016.  *See Companion II*, ECF Nos. 164 (Sixth Amended Scheduling Order), 185 (Order on Discovery Issues).  While *Companion II* is not yet closed, many claims have been resolved on cross-motions for summary judgment, partial settlement just prior to a scheduled jury trial, and through rulings on non-jury issues.  *E.g.*, *Companion II*, ECF Nos. 258, 409, 414.

---

[1]  Companion has taken the position the Pay-Go line of business is also governed by the 2006 Coverage Agreement.  The Northern District of Texas disagreed in *Companion I*.  This court has not addressed the issue.

2

Remaining issues will be resolved through accounting and actuarial reviews, now in their final stages, and post-judgment petition for attorneys' fees, costs, and interest. *Companion II*, ECF No. 409 (Joint Submission); ECF No. 425 (Order on Actuarial Report).

**Present Action.** The claims in the present action are based primarily if not solely on the 2006 Coverage Agreement and related agreements. *See* ECF No. 21 (First Amended Complaint). The related agreements include two agreements signed by Wood: a Guaranty and Indemnity Agreement ("Wood Guaranty"); and a Pledge Agreement ("Wood Pledge").[2] *See, e.g.*, *id.* ¶¶ 8, 9, 31. The causes of action are summarized below.

1. The first cause of action alleges the AMS Defendants breached the 2006 Coverage Agreement by failing to provide a $20 million letter of credit following a November 4, 2016 demand. *Id.* ¶¶ 46-54 (seeking damages and specific performance).

2. The second cause of action alleges Wood breached the Wood Guaranty by failing to cause a letter of credit to be issued (covering the AMS Defendants' obligations) following a November 14, 2016 demand. *Id.* ¶¶ 55-69 (seeking damages and specific performance).

3. The third cause of action alleges Wood breached the Wood Guaranty by failing to provide annual financial statements despite "several written requests" including a November 14, 2016 demand. *Id.* ¶¶ 70-78.[3]

---

[2] All but the Wood Pledge were at issue in *Companion II*.

[3] As in the first and second causes of action, Companion seeks relief including but not limited to specific performance. The performance sought suggests Companion is seeking relief for defaults predating the demand letter sent to Wood on November 14, 2016, as it seeks financial statements from him for the years ending December 31, 2011, through December 31, 2016. *Id.* ¶ 78.

4. The fourth cause of action alleges Wood breached the Wood Guaranty and Wood Pledge by failing to provide *information* relating to pledged assets (including stock in AMS and AMS II) and to *deliver certain instruments of transfer and assets* following a November 14, 2016 demand. *Id.* ¶¶ 79-90. It also alleges Wood breached the Wood Pledge through his surreptitious sale of essentially all assets of AMS and AMS II and attempted dissolution of those entities in March 2016.[4] *Id.*

5. The fifth cause of action alleges the breach of contract addressed in the fourth cause of action was accomplished with fraudulent intent and accompanied by a fraudulent act because Wood concealed the information relating to the sale and attempted dissolution. *Id.* ¶¶ 91-100. Companion alleges Wood acted with an intent to (1) avoid providing Companion protections contemplated by their agreements, (2) "limit or escape liability under the agreements"; and (3) "misappropriate the assets of [AMS and AMS II] for his own benefit and to Companion's detriment." *Id.* ¶ 89.

6. The sixth cause of action alleges Wood's sale of AMS and AMS II assets constitutes a fraudulent conveyance. *Id.* ¶¶ 101-06. Companion alleges Wood was "a debtor who . . . owed Companion a first priority lien and security interest in AMS's assets" and, in contravention of Companion's interest as a creditor, "secretly transferred all of AMS's assets" to a third party "for the purpose of making Wood and AMS judgment proof[.]" *Id.* ¶¶ 102, 103.

---

[4] The First Amended Complaint does not state the date of the alleged sale of assets, but describes the sale as surreptitious and asserts Companion only recently learned of it. ECF No. 21 ¶ 88.

7. The seventh cause of action alleges Wood's sale of AMS and AMS II assets breached a fiduciary duty Wood owed to Companion. *Id.* ¶¶ 107-13.

8. The eighth cause of action alleges Wood and the AMS Defendants are obligated to reimburse Companion for the portion of Companion's settlement with the North Carolina Insurance Guaranty Association ("NCIGA") attributable to the below-deductible portion of insurance claims covered by that settlement. *Id.* ¶¶ 114-120. It also alleges Defendants are obligated to contribute the same share of "any future liability associated with the alleged 'dual' or 'overlapping' Policies" that have caused various state's insurance guaranty associations to pursue claims against Companion. *Id.* ¶ 119.

9. The ninth cause of action alleges Wood is obligated under the Wood Guaranty to "pay all legal fees, costs, losses, and expenses incurred by Companion related to the claims of state guaranty funds." *Id.* ¶ 125. This claim does not specifically mention and is not limited to the settlement with NCIGA.

10. The tenth cause of action alleges Wood is obligated under the Wood Guaranty to "satisfy the demands or claims made by Companion in the First Amended Complaint in this action and 'indemnify and hold Companion harmless from and against any and all claims, suits, hearings, proceedings, actions, damages, liabilities, fines, penalties, losses, costs, or expenses, including without limitation attorneys' fees, at any time arising out of or otherwise related to, directly or indirectly,' the 2006 Coverage Agreement and/or the Policies." *Id.* ¶ 133.

## STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain the plaintiff

cannot prove any set of facts in support of its claims that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need only accept as true the complaint's factual allegations, not its legal conclusions); s*ee also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 587 (4th Cir. 2015) (noting *Iqbal* and *Twombly* articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." (emphasis and alteration in original, internal quotation marks omitted)); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012) for proposition

plaintiff need not forecast evidence sufficient to prove the elements of a claim, but must allege sufficient facts to establish those elements).

## DISCUSSION

### I. Contract Claims

Defendants argue Companion's contract-based claims (first through fifth and eighth through tenth causes of actions) should be dismissed for the following five reasons: (1) they improperly split claims that were or could have been raised in prior litigation; (2) they are barred by the statute of limitations; (3) damages are not adequately pleaded; (4) the allegations of a contractual duty are deficient to the extent Companion alleges breach based on sale of assets or attempted dissolution of AMS and AMS II; and (5) the indemnification claim is too vaguely pleaded. These arguments are addressed, in order, below.

#### A. Claim Splitting

**Defendants' arguments.** Defendants argue the contract claims are barred for improper claim splitting because they arise out of the same contracts and transactions at issue in *Companion II* and should have been brought, if at all, in that litigation. Defendants assert the facts underlying most if not all of the contract claims were known before the deadline for moving to amend the pleadings in *Companion II*.[5]

_____

[5] In their opening memorandum, Defendants appear to argue all but the sixth and seventh causes of action are barred for improper claim splitting. ECF No. 25-1 at 11. Their reply memorandum addresses only the first through third, eighth and ninth causes of action under this argument. ECF No. 28 at 5. While this may suggest the claim-splitting argument is abandoned as to the fourth, fifth, and tenth causes of action, the court considers the argument as to those claims here.

Defendants also assert Companion was aware of (1) Defendants' long-standing failure to provide letters of credit throughout the pendency of *Companion II* and (2) the efforts of various states' guaranty funds, including the NCIGA, to hold Companion responsible for claims under policies Companion argues were solely the responsibility of another insurer ("Dual/Overlapping Policies").[6]  Companion, in fact, asserted an unsuccessful breach of fiduciary duty claim in *Companion II* against Wood and Highpoint that sought relief relating to the Dual/Overlapping Policies.  That claim specifically mentioned Companion's litigation with the NCIGA.

**Companion's Arguments.**  Companion responds the First Amended Complaint "does not rely on facts in existence at the time it commenced [*Companion II*]."  ECF No. 27 at 3.  It refers, specifically, to its demands made in November 2016 letters including a demand "Wood provide his updated financial statements."  *Id.* at 4.  As to the sale of AMS and AMS II assets, Companion refers to actions occurring in March 2016 and Wood's failure to comply with a related demand in November 2016.  *Id.*  Companion characterizes its claim for contribution to the NCIGA settlement as arising in March 2017 based on the date of that settlement.  *Id.* at 4.  Companion concludes the claim-splitting bar does not apply because facts supporting its present claims did not exist when *Companion II* was filed in September 2014 or when the deadline for amending pleadings in that action passed in August 2015.  *Id.* at 5.  Companion also argues comments by the court in a pre-

_____

[6]  The other insurer is Dallas National Insurance Company ("Dallas National").  ECF No. 21 ¶¶ 14-19, 116.   Dallas National was owned by Wood when the 2006 Coverage Agreement was signed, is referred to in that agreement as one of the "AMS Entities," was subsequently sold to a third party, and is now in liquidation.  *Id.* ¶¶ 14-19, 23.  As a consequence of Dallas National's insolvency, "various state guaranty funds and other claimants, including [the NCIGA]" are pursuing recovery from Companion for obligations under the "Dual/Overlapping Policies."  *Id.* ¶ 116.

trial hearing in *Companion II* indicate prior approval of amendment of the present action to include claims relating to its settlement with the NCIGA.

**Standard.** Subject to certain limitations, the claim-splitting bar requires dismissal of claims if they arise out of the same transaction or series of transaction addressed in previously-filed litigation. *Hartnett v. Bellman,* 800 F.2d 1308, 1313 (4th Cir. 1986). Claims may fall within the claim-splitting bar even if they "involve different harms or different theories or measures of relief." *Id.* at 1314. Generally, this rule will bar later claims relating to breach of the same contract addressed in earlier litigation, "so long as the breaches antedated the original action." *Peteromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988). Thus, the critical question is whether the claims existed at a time they could have been raised in the prior litigation. *See Hartnett*, 800 F.2d at 1313 (distinguishing barred claims from those that "did not exist at the time of the prior litigation").

**Discussion.** As Defendants note, the First Amended Complaint includes factual allegations that overlap with factual allegations in *Companion II*. These include allegations addressing the contractual relationships and respective obligations of the parties under the 2006 Coverage Agreement and related agreements. They also include allegations relating to the attempts of various state guaranty funds, including the NCIGA, to hold Companion responsible for policies Companion maintains are the sole responsibility of Dallas National.

There are, however, distinctions between the claims, most critically relating to the specific events on which the claims are founded. As explained below, the claims in the present action are based on alleged contractual breaches and other events that occurred, at least in part, after the close of pleadings in *Companion II*. While the First Amended Complaint may be read more broadly, Companion's response to the Motion to Dismiss limits its claims to specific events post-dating the

9

close of pleadings (and in most cases post-dating the close of discovery) in *Companion II*. To the extent so limited, the claims are not barred for claim-splitting.

**First through third causes of action.** The first through third causes of action allege breach due to Defendants' failure to provide letters of credit and a financial statement *following a November 14, 2016 demand*. Companion's arguments in opposition to dismissal clarify its intent to pursue *only* claims for failure to respond to this recent demand.[7]

This clarification limits the claims to events occurring after the August 2015 deadline for amendment of pleadings (indeed, after the October 2016 close of discovery) in *Companion II*. Given the ongoing nature of the parties' contractual relationship and the timing of the particular breaches referenced, the court finds the first through third causes are not barred based on improper claim splitting *to the extent limited to failures following the November 14, 2016 demand*.

**Fourth and fifth causes of action.[8]** The fourth cause of action alleges Wood breached the Wood Guaranty and Wood Pledge by failing to take required action (provide requested information and turn over certain instruments and substitute assets) following a November 14, 2016 demand. It seeks relief for this failure and related actions taken in March 2016 (dissolution or attempted dissolution of entities whose stock was pledged) as well as for Wood's earlier sale of AMS and AMS II assets. While the date of the asset sale is not provided, Companion alleges it

---

[7] While allegations in the third cause of action regarding Wood's financial statements may be construed to reach earlier failures, Companion's response to the Motion to Dismiss relies solely on the failure to comply with the November 2016 demand. The court accepts this as a limitation on the claim.

[8] In their opening memorandum, Defendants argue the fourth and fifth causes of action are barred under the claim-splitting rule. They do not argue for application of this rule to these claims on reply. The court, nonetheless, assumes Defendants have not abandoned this argument as to these claims.

learned of the sale only after the fact (apparently through depositions taken in 2016). The fifth cause of action addresses the same alleged breaches of contract, adding allegations the breach was committed with fraudulent intent and accompanied by a fraudulent act.

In responding to the Motion to Dismiss, Companion refers only to the March 2016 attempted dissolution, the failure to act following the November 2016 demand, and the recently discovered sale of assets. So limited, the fourth and fifth causes of action do not constitute claim-splitting because the challenged events occurred (or were discovered) after the deadline for amending pleadings in *Companion II*.

**Eighth and ninth causes of action.** The eighth and ninth causes of action seek relief for losses resulting from various state guaranty funds' pursuit of recovery from Companion for Dual/Overlapping policies. The eighth cause of action focuses on but is not limited to losses resulting from the settlement with the NCIGA. It limits the relief sought to the portion of any settlement (or other liability imposed) attributable to the deductible portion of the policy or policies under which liability is imposed. The legal theory is contract-based, seeking recovery from the AMS Defendants based on the 2006 Coverage Agreement and policies and from Wood based on the Wood Guaranty.

The ninth cause of action is asserted solely against Wood and seeks broader relief (including defense costs and losses, presumably including payments to cover liability) based on the Wood Guaranty. It does not specifically mention and is not, in any event, limited to costs and losses relating to the NCIGA settlement. It, instead, refers generally to Companion's disputes with multiple states' guaranty funds.

These two causes of action overlap with the thirteenth cause of action in *Companion II*, which sought relief from Wood (and Highpoint) for placing Companion in the position of having

11

to defend claims by state guaranty funds relating to Dual/Overlapping Policies (referred to as "Dual Coverage" policies in *Companion II*). *See Companion II*, ECF No. 88 ¶¶ 173-82. The thirteenth cause of action in *Companion II* was pursued under a breach of fiduciary duty theory and specifically mentioned then-ongoing litigation with the NCIGA as one of multiple disputes with state guaranty funds. *Id.* ¶ 179. It sought both defense costs and indemnification for any liability that might be imposed in the future.

In sum, the eighth and ninth causes of action here address the same subject matter as the thirteenth cause of action in *Companion II*. They also seek relief that overlaps with relief sought in *Companion II* including pursuit of relief for potential future injuries resulting from known or anticipated disputes with third parties.[9] While the claims in the two actions rest on different legal theories and are not pursued against identical sets of Defendants, all Defendants in the present action were Defendants in *Companion II*. These factors raise claim-splitting concerns.

There are, however, countervailing considerations. Most critically, in seeking summary judgment in *Companion II*, Defendants argued "Companion's purported damages based on alleged 'dual coverage' are entirely speculative" because Companion, at that point, had paid no claims. *See Companion II*, ECF No. 201-1 at 28. Consistent with Defendants' speculativeness argument in *Companion II*, Companion now argues its claim for a portion of its settlement with NCIGA is only recently ripe. *See* ECF No. 27 at 4. Companion does not address ripeness or other potential arguments against claim-splitting as to the broader relief sought under the eighth or any relief

_____

[9] The relief sought through the eighth cause of action is more limited than that sought in *Companion II* because it seeks only the portion of any settlement (or other liability imposed on Companion) attributable to what Defendants would otherwise have been obligated to pay as part of their deductible liability and does not seek related litigation costs. The ninth cause of action seeks broader relief.

sought under the ninth causes of action. Thus, Companion's response to the Motion to Dismiss appears to voluntarily limit the scope of its claims to those arising from settlement with the NCIGA and limited to the portion of that settlement corresponding with Defendants' below-deductible obligations.

Given Defendants' ripeness arguments in *Companion II*, the court finds the eighth cause of action is not barred for claim-splitting to the extent it seeks recovery of the portion of the settlement with NCIGA corresponding with Defendants' below-deductible obligations. As noted above, Companion's argument addresses only this aspect of the eighth cause of action, thus appearing to voluntarily limit its eighth cause of action to this relief.

The ninth cause of action differs from the eighth largely due to its breadth. Rather than seeking contribution for the share of Companion's settlement with the NCIGA attributable to deductibles (amounts Defendants would presumably have been obligated to pay whether the policies were insured by Companion or Dallas National), the ninth cause of action seeks recovery from Wood based on the Wood Guaranty for "all legal fees, costs, losses, and expenses incurred by Companion related to the claims of state guaranty funds." ECF No. 21 ¶ 125. Thus, the claim appears to seek past and future litigation expenses as well as recovery for possible future liability arising from claims of state guaranty funds. This overlaps significantly with the relief sought from Wood (and Highpoint) through the thirteenth cause of action in *Companion II*, albeit under a different legal theory (based on a contractual guarantee rather than a fiduciary duty). To the extent it seeks relief for any claim that was ripe on or before the deadline to amend pleadings in *Companion II*, the ninth cause of action is barred for claim-splitting. To the extent Companion pursues relief for potential future settlements, judgments or other future injuries, the ninth cause of action is unripe.

**Tenth cause of action.** Companion's tenth cause of action seeks recovery from Wood under the Guaranty and Indemnification Clauses of the Wood Guaranty. The recovery sought can be broken into two subparts, (1) guaranty of damages arising from "demands or claims . . . . *referenced in the First Amended Complaint*" and (2) indemnification for other obligations "*at any time* arising out of or otherwise related to, directly or indirectly' the 2006 Coverage Agreement and/or the Policies." EC No. 21 ¶ 133 (emphasis added). Companion advanced a similar claim in *Companion II.*

In opposing dismissal, Companion characterizes the tenth cause of action as seeking "to enforce the Wood Guaranty and Indemnity Agreement with respect to the obligations and liabilities that arise from the *specific conduct alleged in the complaint.*" ECF No. 27 at 12 (also stating "Companion's amended complaint details the specific contractual responsibilities the AMS Entities have ignored, including their failure to post a letter of credit, to protect corporate assets, and to provide required financial data and documents"). This argument effectively limits the tenth cause of action to enforcement of the Wood Guaranty as to (1) other claims asserted in the First Amended Complaint (first subpart above) that (2) survive the motion to dismiss. So limited, the court finds the tenth cause of action is not barred for claim splitting.[10]

---

[10] The broad wording of the second subpart is particularly problematic as it appears to encompass any claim accruing at any time. Companion's argument in opposition to dismissal abandons such a broad reading of this claim. Such a reading would, in any event run afoul of the claim-splitting rule due to overlap with claims in *Companion II.* It would also fail to give fair notice of the basis for the claim in other respects. *See infra* § I.C. (addressing Defendants' fifth argument as to contract claims).

The court accepts Companion's voluntary limitation of the tenth cause of action to seeking to enforce the Wood Guaranty as to claims specifically pleaded in this action that are not otherwise barred. The motion to dismiss is denied as to the narrowed claim.

### B. Statute of Limitations Defense

An affirmative defense may be resolved on motion to dismiss only if the defense "clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (finding defense did not clearly appear on face of complaint). A motion to dismiss based on a statute of limitations defense requires the complaint "clearly allege all facts necessary to the affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (finding facts necessary to statute of limitations defense were not clearly alleged).

Defendants argue Companion's contract-based claims are barred in whole or in part because they arose before February 23, 2014 (three years before this action was filed). They maintain any duty to provide letters of credit or financial statements arose in or before 2011 and this raises a time-bar for any claim based on failure to provide these documents. Defendants argue Companion's November 2016 demand letter is irrelevant because the duty to provide the letters of credit and financial statements preexisted the demand.

In response, Companion argues the obligations at issue are recurring obligations that were not waived by prior non-enforcement. ECF No. 27 at 7 (citing *State ex rel Wilson v. Ortho-McNeil-Johnson Pharmas.*, 777 S.E.2d 176, 199-200 (S.C. 2015) for continuous accrual rule and noting duty to provide letter of credit "exists every day" and obligation to provide financial statements is an ongoing annual obligation); *see also id.* at 8, n.5 (relying on contract language giving Companion discretion as to the order and timing of enforcement of protections and providing failure to enforce contractual rights does not constitute waiver). These arguments effectively

concede any claim for breach based on events predating February 23, 2014. Companion's arguments as to claim-splitting (addressed above), further limit Companion's contract-based claims to events occurring well within the three-year period predating this litigation, specifically Defendants' failure to comply with demands made in November 2016 or actions relating to the sale of AMS and AMS II assets and attempted dissolution of those corporations.

In light of the limitations noted above, the court finds the contract-based claims are not barred by the statute of limitations, at least not on motion to dismiss.

### C. Adequacy of Damages Allegations

Defendants assert damages are inadequately pleaded as Companion does not allege it has suffered any injury as a result of Defendants' failure to provide letters of credit or requested financial information. Companion responds that it is entitled to at least specific performance given the purpose of the letters of credit and requirement to provide financial information. The court agrees that the requested relief, including for specific performance, is sufficient to satisfy the pleading requirements, particularly given the nature of the obligations at issue (contractual obligations to provide financial assurances).

### D. Adequacy of Pleading Contractual Duty as to Pledge

Defendants challenge the adequacy of pleading of a contractual duty as to the fourth cause of action, which alleges Wood breached the Wood Pledge by selling virtually all assets of AMS and AMS II (corporations whose stock was pledged) and then dissolving or attempting to dissolve those corporations. Defendants argue the Wood Pledge does not expressly or impliedly prohibit either action.

In response, Companion relies on language from the Pledge that not only gives Companion "a first priority lien and security interest in all of the issued and outstanding equity interests" in

AMS and AMS II, but provides Companion the right to all earnings on the equity interests, "all substitutions therefore," and "other properties received upon the conversion or exchange thereof pursuant to any merger, consolidation, reorganization, *sale of assets* or other agreements[.]"  ECF No. 27 (quoting Wood Pledge ¶ 2.1).  It also relies on case law holding a pledgee of stock has "a significant enough interest to be heard in equity for the protection and preservation of the assets" of the entity whose stock is pledged "since a loss of corporate assets inevitably results in a depreciation of the value" of the corporation's stock.  *Id.* at 11 (citing *FDIC v. Kerr*, 637 F. Supp. 828, 840-41 (W.D.N.C. 1986).  In addition, Companion relies on the duty of good faith and fair dealing inherent in every contract.  *Id.* (citing Amended Complaint ¶¶ 107-13).

The court finds the fourth cause of action adequately pleaded.  It is at least arguable the language of the Wood Pledge combined with the duty of good faith and fair dealing precluded sale of substantially all assets of the pledged entities without delivering the proceeds or benefits of the sales to Companion.  At the least, this is a novel issue of state law that would better be resolved after full development of the factual record.  *See Madison v. Amercan Home. Prod. Corp.*, 595 S.E.2d 493, 494 (S.C. 2004) (acknowledging general rule "important questions of novel impression should not be decided on a motion to dismiss" but noting such resolution is proper where "the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues").

## E.    Indemnification Claim

Defendants argue the tenth cause of action should be dismissed because it is too vague to give fair notice of the claim.  As noted above (§ I.A.), this cause of action seeks enforcement of the Wood Guaranty as to (1) claims asserted in the First Amended Complaint and (2) more generally as to duties arising at "any time" under the subject agreements.  Companion's response

voluntarily limits this claim to enforcement of the Wood Guaranty as to claims specifically pleaded in the First Amended Complaint that otherwise survive the Motion to Dismiss. So limited, the indemnification claim survives to the same extent the substantive claims survive.

## II.    Breach of Fiduciary Duty Claim

Defendants argue the seventh cause of action for breach of fiduciary duty should be dismissed because the Wood Pledge did not create a fiduciary relationship. In response, Companion argues, as pledgee of all stock, it stood in the shoes of stockholders, to whom corporate officers and directors owe a fiduciary duty. ECF No. 27 at 13-14 (citing, *e.g.*, *Talbot v. James*, 190 S.E.2d 759, 764 (S.C. 1972) (finding fiduciary relationship between corporate officers and stockholders requiring disclosure of facts relevant to contracts between officers and corporation); *Nat'l Bank of Greenville v. Jennings*, 17 S.E. 16, 17-19 (S.C. 1893) (imposing fiduciary duty on pledgor of choses in action in favor of pledgee where pledgor undertook to collect on choses of action).). In reply, Defendants point to both the age of these decisions and certain distinctions in arguing neither support imposition of a fiduciary duty.

Under South Carolina law, whether there is a fiduciary relationship between two classes of persons is an equitable issue for the court to resolve. *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715-16 (S.C. 2003). Such a relationship arises "when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing confidence." *Id.* at 715. "Historically, the [South Carolina Supreme Court] has reserved imposition of fiduciary duties to legal or business settings, often in which one person entrusts money to another, such as with lawyers, brokers, corporate directors, and corporate promoters." *Id.* at 716 (declining to find fiduciary relationship between student and advisor).

While neither case on which Companion relies is on point, together they suggest at least the possibility the South Carolina Supreme Court would recognize a fiduciary relationship between a controlling officer of a corporation who pledges all of the corporation's stock and the pledgee of that stock as it relates to corporate assets. Other courts appear to recognize a fiduciary relationship under similar circumstances. *See*, *e.g.*, *Gibson v. Manuel*, 534 So. 2d 199, 201-03 (Miss. 1988) (relying on analogous fiduciary duty owed by corporate officers to shareholders in finding corporate officer who pledged stock owed fiduciary duty to pledgee). *Gibson* noted the existence of "a considerable body of case law [from other states] accepting the proposition that a pledgor of corporate stock, when in control of the corporation, has the affirmative duty to preserve corporate assets for the benefit of the pledgee." *Id.*; *see also* Fletcher Cyclopedia of the Law of Corporations § 5651 (Suppl. 2017) (addressing rights of pledgees of corporate stock including right to pursue equitable relief to preserve corporate assets and noting "pledgee is entitled to have [its] security protected from fraudulent dissipation by the pledgor, where the latter practically controls the corporation."); *id.* § 5641 ("the rights and duties arising from the relationship of pledgor and pledgee are analogous to those that all corporate officers owe to shareholders"). Under these circumstances, the court finds the argument raises a novel issue that would better be resolved on a fully developed factual record. *See Madison*, 595 S.E.2d at 494 (discussed *supra* § II.D.). Accordingly, the court denies Defendants' motion to dismiss the seventh cause of action.

## III. Fraud-Based Claims

Defendants seek dismissal of Companion's two fraud-based claims: the fifth cause of action for breach of contract accompanied by a fraudulent act; and the sixth cause of action for fraudulent conveyance. Defendants argue the allegations are not sufficiently detailed to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. As to the fifth cause of action, Defendants also

argue the alleged fraudulent act is not separate and distinct from the breach of contract. As to the sixth cause of action, Defendants argue Companion has not alleged Companion was a creditor at the time of the challenged sale of assets (as opposed to a potential creditor).

These arguments are not persuasive. The allegations provide fair notice of the basis for the fraud allegations, specifically, Wood's sale of assets of entities whose stock he had pledged, attempted dissolution of the underlying entities, and concealment of the facts. The allegations of concealment are sufficiently distinct from the allegations of the underlying breach to support the fifth cause of action and Companion has pleaded facts that give rise to an inference Companion was a creditor of Wood's at the time of the alleged actions, thus supporting the sixth cause of action. Accordingly, Defendants' motion to dismiss is denied as to the fraud based claims (fifth and sixth causes of action).

## CONCLUSION

For reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. Specifically, as to the first through fifth causes of action, the motion is denied to the extent Companion's claims are limited to seeking recovery for Defendants' alleged (1) failure to provide letters of credit and financial documents following a November 14, 2016 demand; (2) sale of AMS and AMS II assets that Companion did not discover prior to the close of pleadings in Companion II; and (3) attempted dissolution of AMS and AMS II in or around March 2016.

The motion is denied as to the sixth (fraudulent conveyance) and seventh (breach of fiduciary duty) causes of action, both of which address Wood's sale of AMS and AMS II assets and attempted dissolution of those corporations. The motion is denied as to the eighth cause of action to the extent that claim is limited to seeking recovery of the portion of Companion's settlement with the NCIGA corresponding with Defendants' below-deductible obligations under

the policies at issue.  The motion is denied as to the ninth cause of action to the extent that claim

is limited to preclude recovery for any claim for expense or loss that was ripe on or before the

deadline for amendment of pleadings in *Companion II*.  The motion is denied as to the tenth cause

of action to the extent the claim is limited to enforcement of the Wood Guaranty as to other claims

specifically pleaded in this action that survive the motion to dismiss.

   IT IS SO ORDERED.

<u>s/ Cameron McGowan Currie</u>
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
September 20, 2017